775 So.2d 52 (2000)
STATE of Louisiana
v.
Timothy L. HALL.
No. 99-KA-2887.
Court of Appeal of Louisiana, Fourth Circuit.
October 4, 2000.
*55 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, Orleans Parish, New Orleans, Counsel for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, Counsel for Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge DENNIS R. BAGNERIS, Sr., Judge MICHAEL E. KIRBY).
*56 KIRBY, J.

STATEMENT OF THE CASE
Defendant Timothy L. Hall was charged by bill of information on April 27, 1999 with possession of cocaine, a violation of La. R.S. 40:967(C). Defendant pleaded not guilty at his May 7, 1999 arraignment. The trial court denied defendant's motion to suppress the evidence on May 12, 1999. On May 19, 1999, defendant withdrew his plea of guilty and entered a plea of guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976). On August 19, 1999, the trial court sentenced defendant to three years at hard labor, suspended, three years probation, with ten special conditions: (1) twenty drug tests; (2) substance abuse counseling; (3) maintain full-time employment; (4) perform thirty hours of community service; (5) $1,000 to the Judicial Expense Fund; (6) $100 to the indigent transcript fund; (7) $100 to the Orleans Indigent Defender Program; (8) $50 to the Louisiana Commission on Law Enforcement; (9) $50 to the Crime Victim's Reparation Board; and (10) $20 a month to the Department of Probation. The court granted defendant's motion for appeal, and denied his written motion for reconsideration of sentence.

FACTS
New Orleans Police Detective Robert Haar testified that he and Detective Jeff Sandoz proceeded to the 3600 block of Hamburg Street to investigate complaints of narcotics activity occurring at 3620 Hamburg, in the St. Bernard Housing Development. He observed defendant standing on the porch at that address; defendant had his left hand extended toward a female on the ground. The female had her right hand extended toward defendant, and she had currency in her hand. As the officers were turning into the courtyard, defendant and the female turned and observed them. Det. Haar testified that both then appeared to become extremely nervous. The female retracted her hand and walked into the courtyard area. Defendant also retracted his hand and, a few seconds later, turned and "quickly" walked into a hallway. Det. Haar stated that, based on their experience and the complaints of narcotics activity, he believed that he and Det. Sanchez had just interrupted a narcotics transaction. Det. Haar exited the police car and followed defendant into the hallway. He observed defendant reach into his left front pants pocket and remove his hand, keeping it cupped. As defendant went up a stairway toward the second floor, he placed his hand near a wall, and dropped six pieces of crack cocaine to the floor. Det. Haar said there was a small hole in the wall, and speculated without objectionthat defendant was attempting to place the cocaine into the hole when he accidentally dropped it. The cocaine was recovered and defendant was placed under arrest. Approximately $49 was found on his person.
Det. Haar testified on cross examination that the complaint simply was that a person was selling narcotics from the porch at 3620 Hamburg Street. The complainant gave no description of the seller.

ERRORS PATENT
A review of the record reveals no errors patent not raised by defendant as assignments of error.[1]

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the trial court erred in denying his motion to suppress the evidence.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without *57 a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94.
La.C.Cr.P. art. 215.1(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Flight from police officers, alone, will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La.App. 4 Cir. 12/1/99), 746 So.2d 837, 849. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7, (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459-60, citing Benjamin. Further, flight by one's companion at the sight of police can be a factor in determining reasonable suspicion. Id. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra; Fortier, supra.
*58 In the recent case of State v. Bazile, 99-1821 (La.App. 4 Cir. 3/15/00), 757 So.2d 851, police officers were patrolling an area from which there had been citizen complaints of drug activity in a particular block of St. Ann Street. One officer testified that he had made eight to ten drug arrests in that particular block. The officers observed the defendant attempting to flag down a vehicle; one officer testified that narcotics traffickers commonly flag down vehicles to make quick retail street sales. The defendant abruptly stopped his flagging motion when he noticed the police officers, who were in a marked unit. The defendant furtively looked around and began walking away. As he walked away, defendant put his hand in his pocket and furtively looked over his right shoulder toward the officers. Based upon those observations, this court concluded that the officers had reasonable suspicion for an investigatory stop.
The facts of the instant case are similar to those in Bazile, but provide an even stronger case for a lawful investigatory stop. The officers received a citizen complaint of drug activity occurring in front of a particular address. Upon their arrival at the address, they observed what, in one officer's experience, was a narcotics sale taking place, with one individual attempting to hand another currency. The two participants became nervous when they saw the officers, and the one with the currency pulled her hand back and began walking away. Defendant, the other person, also pulled his hand back, hesitated for a few seconds, then turned and "quickly" walked into a hallway. At that point, the officers had reasonable suspicion to believe that defendant had been committing a crime, justifying the stop. One officer followed defendant inside and saw him drop cocaine onto the floor as he unsuccessfully attempted to dispose of it. The trial court properly denied defendant's motion to suppress the evidence.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant claims that the conditions of probation in his sentence are financially excessive. Defendant's written motion to reconsider sentence contains the specific ground that the sentence was unconstitutionally excessive. Therefore, this assignment of error is preserved for review. See La.C.Cr.P. arts. 881.1; 881.2; State v. Robinson, 98-1606, pp. 6-10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 124-125.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
*59 In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185, writ denied, 99-2632 (La.3/17/00), 756 So.2d 324.
In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id.
The purpose of probation is the promotion of a defendant's rehabilitation by allowing him to reintegrate into society without confinement. State v. Clark, 391 So.2d 1174, 1177 (La.1980); State v. Davis, 375 So.2d 69, 73 (La.1979). "It holds no promise and serves no purpose if the conditions are so harsh that the probationer is destined for failure at the outset." State v. Carey, 392 So.2d 443, 444 (La.1981). This includes financial conditions. See Carey; State v. Sartain, 571 So.2d 192 (La.App. 4 Cir.1990). Such excessively harsh financial conditions of probation will be stricken by appellate courts. Carey; Sartain.
The trial court sentenced defendant to three years at hard labor, suspended, and three years probation, with ten special conditions: (1) twenty drug tests; (2) substance abuse counseling; (3) maintain full-time employment; (4) perform thirty *60 hours of community service; (5) $1,000 to the Judicial Expense Fund; (6) $100 to the indigent transcript fund; (7) $100 to the Orleans Indigent Defender Program; (8) $50 to the Louisiana Commission on Law Enforcement; (9) $50 to the Crime Victim's Reparation Board; and (10) $20 a month to the Department of Probation.
In Sartain, this court vacated as excessive a sentence containing a probation condition requiring restitution of $400 per month by a defendant who was the sole support of herself and four children, and who earned $35 per day as a domestic worker. This court found that the restitution condition was unlikely to be fulfilled; would not promote the rehabilitation of the defendant; and almost insured the failure of probation. In Carey, the court vacated as excessive a sentence containing a probation condition requiring that the defendant make restitution at the rate of $50 per week until the entire $10,170.42 she stole was repaid. Noting that no reasons were given for the sentence as required La. C.Cr.P. art. 894.1, the court vacated because the record did not otherwise support the sentence. That is, the court noted that the defendant was a thirty-nine-year old mother of seven and first offender, with a poor educational background allowing only limited employment opportunitiesshe was earning only $528 per month at the time of sentencing.
The trial court in the instant case ordered a presentence investigation report, but that report is not contained in the record. However, the court noted that defendant had shown proof of employment prior to sentencing. The court said that the probation department reported that defendant had done everything he had been asked to do, and that all of defendant's presentencing drug tests had been negative. A minute entry dated October 22, 1999, two months after sentencing, reflects that a status hearing was held that date. The minute entry contains the notation "C.L. PittmanLabor and Carpentry," indicating that this was defendant's employment. The record reflects that at the time of defendant's arrest and indictment he had an address in the St. Bernard Housing Development. Defendant, who was twenty-eight years old at the time of sentencing, was a first-felony offender, as reflected by his suspended sentence and probation pursuant to La.C.Cr.P. art. 893. Defendant was represented by an indigent defender at trial, and is represented by an indigent defender on appeal. All costs were waived by the trial court, presumably because of defendant's indigency status. There is no indication that defendant was married or that he had any children he was supporting. While defense counsel alleged in a motion for reconsideration of sentence that the trial court did not consider any mitigating factors in sentencing defendant, which factors counsel claimed would have been more fully revealed had a presentence investigation report been ordered, the record reflects that a presentence investigation report was ordered. The record also reflects that the trial court reviewed the report. Therefore, it is presumed the trial court was familiar with any mitigating and/or aggravating factors it contained. See State v. Recasner, 98-2518, pp. 5-6 (La.App. 4 Cir. 12/22/99), 750 So.2d 336, 339. Furthermore, trial counsel made no attempt to present any mitigating factors to the court which might have affected his client's sentence. It might be presumed that if there were any mitigating factors not reflected by the presentence investigation report, defense counsel would have presented them for the court's consideration.
The record reflects that defendant was an able-bodied twenty-eight-year old male gainfully employed in the construction industry. The conditions of his probation required him to pay a total of $1,300, plus a $20 per month probation fee. The trial court was required under La.C.Cr.P. art. 895.1(C) to impose a monthly probation fee of at least $20 or, in lieu thereof, pursuant to art. 895.1(D), to require monthly community service if it found that defendant *61 was unable to pay the monthly fee. Defendant has failed to show that these conditions, as alleged by his appellate counsel, are "financially excessive and militate against the success of the probation."
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant claims that the trial court erred in ordering defendant to pay $1,000 to the "Judicial Expense Fund," instead of ordering that he pay it to the Criminal District Court Fund.
Defendant did not specifically object to this condition of probation, nor did he specifically allege this ground as an objection. Ordinarily, this would preclude review on appeal. See La.C.Cr.P. art. 881.1; La. C.Cr.P. art. 881.2; State v. Robinson, 98-1606, pp. 6-10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 124-125. However, since this error is apparent by inspection of the record, and is based on the face of statutory law, the error is reviewable as an error patent. See La.C.Cr.P. art. 920(2).
La.C.Cr.P. art. 895.1(B) provides that when a court suspends the imposition or execution of a sentence and places a defendant on probation, it may order, as a condition of probation, "an amount of money to be paid by the defendant to ..." among others, the victim (as compensation in addition to restitution); the indigent defender program for the respective court; a law enforcement agency for reasonable costs incurred in arresting a defendant for distribution of controlled dangerous substances; etc. La.C.Cr.P. art. 895.1(B)(2) provides for payment to "the criminal court fund to defray the costs of operation." La. R.S. 15:571.11 "sets up a scheme" providing for the collection and deposit of "all fines and forfeitures imposed by the district courts ...." See State v. Craig, 93-2515, p. 5 (La.5/23/94), 637 So.2d 437, 442. La. R.S. 15:571.11(D) specifically provides such a scheme for Orleans Parish, and states:
All fines and forfeitures, including forfeitures of criminal bail bonds, imposed in criminal cases and prosecutions by the courts of Orleans Parish and any payments ordered as a condition of probation under Code of Criminal Procedure Art. 895.1(B)(2) shall, upon collection, be paid to the criminal sheriff of Orleans Parish who shall deposit same in a special account, and shall thereafter be divided equally between the district attorney of Orleans Parish and the criminal district court of Orleans Parish in two special accounts, one account to be administered by the judges of the criminal district court of Orleans Parish, and the other account to be administered by the district attorney of Orleans Parish to be used in defraying the expenses of the criminal courts of the parish, extraditions, and such other expenses pertaining to the operation of the criminal court of Orleans Parish and the office of the district attorney of Orleans Parish. Disbursements from the account to the criminal district court and district attorney shall be made on an equal basis. Said accounts shall be annually audited by the director of finance of the city of New Orleans. (emphasis added).
La. R.S. 13:1381.4 provides for a "judicial expense fund" for Orleans Parish Criminal District Court, and provides in pertinent part:
A. (2) In addition to all other fines, costs, or forfeitures lawfully imposed by this Section or any other provision, the court may impose an additional cost against any defendant who has been finally convicted of a misdemeanor, excluding traffic violations, or a felony. The additional costs authorized in this Paragraph shall not exceed two hundred fifty dollars in the case of a misdemeanor nor exceed two thousand dollars in the case of a felony. All such sums collected shall be transmitted to the judicial administrator for further disposition in accordance herewith.

*62 B. The judicial administrator of the Criminal District Court for Orleans Parish shall place all sums collected or received under this Section in a separate account to be designated as the judicial expense fund for the Criminal District Court for Orleans Parish. The judges of the court shall cause to be conducted annually an audit of the fund and the books and accounts relating thereto and shall file the same with the office of the legislative auditor where it shall be available for public inspection.
It is defendant's position that the trial court was without statutory authority to order that as a condition of his probation he pay $1,000 to the judicial expense fund, which is provided for by La. R.S. 13:1381.4. Defendant concedes that, pursuant to La.C.Cr.P. art. 895.1(B)(2) he could have been ordered to pay $1,000 to the "criminal court fund." Defendant further concedes that he could have been ordered to pay costs in the amount of $1,000 to the judicial expense fund pursuant to R.S. 13:1381.4(A)(2). However, defendant correctly notes that the trial court waived payment of all costs, presumably due to defendant's indigency status.
In State v. Rugon, 355 So.2d 876 (La. 1977), an Orleans Parish Criminal District Court judge imposed a special condition on a defendant who pleaded guilty to possession of marijuana, requiring that the defendant "donate" $200 to the Judicial Administrator of the Criminal District Court for the Appellate Process Support and Court Programs Fund. The State objected that ordering defendant to pay to this fund was in direct contravention of La. R.S. 15:571.11(D) which, at that time, provided that all fines and forfeitures imposed in criminal cases in Orleans Parish be paid to the Orleans Parish District Attorney, who could use the funds at his discretion for the operations of criminal district court and his office. The Louisiana Supreme Court ruled that the "donation" was a fine, subject to the legislative mandate of La. R.S. 15:571.11(D) that it be paid to the Orleans Parish District Attorney. The court annulled the sentence insofar as it ordered that the payment of the fine be made to the Judicial Administrator, and remanded the case for correction of the sentence by making the fine payable to the District Attorney.
In the instant case, it appears that the only parties adversely affected by the trial court's order that the payment of the $1,000 be to the "Judicial Expense Fund" would be the criminal court fund and the Orleans Parish District Attorney. However, the only statutory authority under which the trial court could require payment of the $1,000 was either (1) La. C.Cr.P. art. 895.1, pursuant to which payment of the $1,000 could be required as a condition of probation, with the funds being paid to, among others, the "criminal court fund," or (2) La. R.S. 13:1381.4, pursuant to which payment of the $1,000 could be required as costs, with such costs being paid to the judicial administrator, who in turn would deposit those funds into the "judicial expense fund." The trial court waived all costs, and specifically ordered that defendant pay the $1,000 as a condition of his probation, as authorized by La.C.Cr.P. art. 895.1. Therefore, the trial court erred in directing payment of the $1,000 to the "judicial expense fund" instead of the "criminal court fund" as provided by that statute.
Therefore, defendant's sentence is vacated and set aside insofar as it directs payment of the $1,000 to the judicial expense fund, and remanded to the trial court for correction of the sentence by requiring payment to the criminal court fund. See State v. Rugon, 355 So.2d 876 (La.1977).

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant argues that the record fails to show that counsel was present at the time he was sentenced.
La. Const. art. I, § 13 recognizes the right to the assistance of counsel at every stage of the proceedings against a *63 person accused of a crime. State v. White, 325 So.2d 584, 585 (La.1976). Likewise, the constitutional right to the assistance of counsel provided by the Sixth Amendment of the United States Constitution mandates the right, unless waived, to the assistance of counsel at every critical stage of the proceedings, including an initial or deferred sentencing. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). Unless a defendant has made a knowing and intelligent waiver of his right to counsel, any sentence imposed in the absence of counsel is invalid and must be set aside. State v. Williams, 374 So.2d 1215, 1217 (La.1979).
Both the docket master and minute entries from the date of sentencing state that defendant's counsel was present for sentencing. Those respective entry notations come before the respective entry notations reflecting the imposition of sentence. Defendant correctly notes that the sentencing transcript does not indicate any words spoken by defense counsel until after sentencing was concluded, nor does it contain a recognition by the court that defense counsel was present prior to and/or at the moment of sentencing. The transcript shows that after sentencing was concluded, the trial court wished the defendant good luck. Immediately underneath that closing the transcript contains six asterisks in a row. Underneath those asterisks the transcript states:
MR. MEYER:
I want to revisit 406-537, Timothy Hall. That was a Crosby plea, and I see you've already sentenced Mr. Hall. I would like to file a motion for reconsideration of sentence and a motion for an appeal.
THE COURT:
Motion to reconsider the sentence, Mr. Meyer, I'll deny that. Motion for appeal was granted November 3rd.
Underneath this last entry by the court is another row of six asterisks. The transcript of the motion to suppress hearing also contains a row of six asterisks after the close of the hearing, with nothing else following those asterisks. Thus, it appears that the court reporter uses the row of six asterisks to mark the end of a particular hearing, and marked the end of defendant's sentencing. When the trial court referred to defendant's motion for appeal being granted on November 3, it meant the return date was set for that date. The notice of appeal in the record reflects that defendant's motion for appeal was granted on August 19, the date of sentencing, as do both the minute and docket master entries.
Generally, when there is a conflict between the minute entry and the trial transcript, the transcript controls. State v. Anderson, 99-1407, p. 2, n. 1 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 323, n. 1; State v. Randle, 98-1670, p. 2, n. 1 (La. App. 4 Cir. 12/22/99), 750 So.2d 353, 355, n. 1. However, in the instant case there is no conflict. The sentencing transcript does not reflect whether or not defense counsel was present prior to and/or at the moment of sentencing, but does affirmatively show he was present at the hearing after sentencing. This "silence" in the transcript and defendant's interpretation of the post-sentencing colloquy between defense counsel and the trial court is not sufficient to rebut the presumption established by the minute and docket master entries that defense counsel was in fact present for sentencing.
There is no merit to this assignment of error.
For the foregoing reasons, defendant's conviction is affirmed; his sentence is vacated only insofar as it directs payment of $1,000 to the Judicial Expense Fund; the sentence is affirmed in all other respects; and the case is remanded with directions to correct the sentence by ordering that the $1,000 imposed as a condition of probation be payable to the "criminal court fund" in accordance with La.C.Cr.P. art. 895.1(B)(2).
*64 AFFIRMED IN PART; VACATED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] See Assignments of Error Nos. 3 & 4.